ORDERED.

**Dated:  June 03, 2019**

Roberta A. Colton
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION
www.flmb.uscourts.gov

In re

Sarah Katherine Sussman,                    Case No.  8:17-bk-08959-RCT
                                            Chapter 7

                    Debtor.

_____

## MEMORANDUM DECISION
## FOLLOWING TRIAL ON CONTESTED MATTERS
### (Docs. 7, 28, 85, and 113)

On April 15, 2019, the court conducted a day-long trial on (1) the Debtor's *Emergency Motion to Enforce the Automatic Stay and Request for Damages, Fees and Costs* (Doc. 7), (2) the *Emergency Motion for Relief from Stay* (Doc. 28) filed by Creditor, Phillip A. Baumann, as Administrator Ad Litem of the Estate of John J. Gaffney, deceased (the "Administrator"), (3) the Administrator's *Motion to Dismiss Case for Debtor's Failure to Comply with 11 U.S.C. §§109(h)(1) and 521(b) and for Debtor's Fraud on the Court* (Doc. 85), and (4) the Administrator's *Objection to Debtor's Claim of Exemptions on Amended Schedule C* (Doc. 113) (collectively, the "Contested Matters").

The journey to trial was tortured and populated by a series of disputes between the

Debtor and her family on one side and the Administrator on the other.  All these disputes, including the Contested Matters, center on the parties' competing claims to a parcel of real property located at 119 S. Clark St., Tampa, FL (the "Clark Street Property").

At trial, the court heard testimony from Debtor Sarah Katherine Sussman, Administrator Phillip A. Baumann, attorney Richard J. McIntyre, attorney Gilbert M. Singer, Debtor's mother Teresa M. Gaffney, in-house counsel to the Hillsborough County Sheriff's Office ("HCSO") Jason Gordillo, and the following members of the HCSO:  Sergeant Michele Polk, Corporal Gary Harris, and Deputy Jonathan Carlton.  The court admitted thirty-two exhibits offered by the Administrator, some limited in scope.[1]  No exhibits were offered by the Debtor.[2]

### Jurisdiction

This court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334(b). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), and (G).

Based on the documentary evidence and credible testimony adduced at trial, the following are the court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. ("Rule(s)") 7052, made applicable by Rule 9014(c).

### Facts

The Clark Street Property once belonged to Debtor's grandfather, John J. Gaffney, who passed away in December 2011.  Before he passed, in or about June 2009, the property was conveyed to Teresa M. Gaffney subject to a life estate retained by Mr. Gaffney.  Quite soon

---

[1]  Doc. 647 (annotated exhibit list).

[2]  Debtor failed to file an exhibit list in advance of trial as required by Local Rule 9070-1 and the court's scheduling orders (Docs. 341 and 507; *see also* Docs. 37, 107, 133, and 189).  In any event, Debtor did not proffer any exhibit before the close of the evidence.  But during closing argument, Debtor's counsel identified two documents filed of record in this case: an unauthenticated copy of the 2016 tax record for the Clark Street Property from the Hillsborough County Tax Collector (Doc. 584), and a non-certified copy of a purported "Notice of Homestead" filed by Debtor in the Hillsborough County Public Records (Doc. 583).  These are discussed in Part II below.

after Mr. Gaffney passed, Ms. Gaffney, by deed dated January 20, 2012, conveyed the Clark Street Property to Debtor as trustee of The Sussman Family Trust Living Trust.[3]

Sometime in early 2014, the Administrator was appointed by the state probate court to commence a state court action to recover the Clark Street Property from Debtor and her family and to void the deeds that purported to convey title to Ms. Gaffney and Debtor as trustee. The Administrator filed the action[4] shortly after his appointment and duly recorded a Notice of Lis Pendens dated April 10, 2014.[5] Attempts by Debtor and her family to dissolve the lis pendens were unsuccessful.[6]

On April 22, 2016, the state court entered an order that struck, as a sanction, Ms. Gaffney's and Debtor's answer and affirmative defenses to the Administrator's complaint (the "Sanctions Order").[7] Thereafter, the state court entered defaults against Ms. Gaffney and Debtor.[8] After dispensing with additional and ultimately unsuccessful motion practice instigated by Ms. Gaffney and Debtor,[9] the state court entered its Final Judgment Upon Default dated October 16, 2017 (the "Final Judgment").[10]

In the Final Judgment, the state court adjudged two distinct matters, both of which it noted were pled in the Administrator's complaint. First, the court declared "null and void" as

---

[3] Adm'r Exs. 23 and 26. The documents creating the family trust have not been produced during this bankruptcy case, nor were they produced to the Administrator in the underlying state court litigation.

[4] *Baumann v. Gaffney et al.*, Case No. 14-CA-3762 (Fla. Cir. Ct. Hillsborough Cty. filed Apr. 10, 2014).

[5] Adm'r Ex. 17.

[6] Adm'r Ex. 22; *see also* Adm'r Exs. 18–21.

[7] The Sanctions Order, which details the conduct that led to its entry, was not offered at trial. It appears in the record as an attachment to the Administrator's Proof of Claim No. 2-2. The Sanctions Order is specifically referenced and expressly relied upon in the final judgment that was admitted at trial. Adm'r Ex. 23. The court takes judicial notice of the Sanctions Order for the purpose of noting the detailed factual account upon which the state court relied in rendering the final judgment. Fed. R. Evid. 201.

[8] Adm'r Ex. 23.

[9] An order dated Sept. 5, 2017, which denied several post-default motions by Ms. Gaffney and Debtor including a motion to dismiss and to vacate the defaults, was read into the record by Debtor's counsel. This order, upon which Mr. Gordillo relied, also decreed that judgment on the complaint would be entered in favor of the Administrator and a writ of possession would issue.

[10] Adm'r. Ex. 23.

a fraudulent transfer the deed that transferred title for the Clark Street Property into Debtor as trustee. Avoidance of that deed effectively returned title to the property to Ms. Gaffney. Second, the state court declared that Ms. Gaffney had obtained title to the Clark Street Property through the exploitation of her father. The court therefore entered judgment against Ms. Gaffney ordering that "legal and beneficial title to and possession of" the Clark Street Property be vested in and held by the Administrator.

The Final Judgment expressly states that it is a conveyance of the Clark Street Property in accordance with Florida Rule of Civil Procedure 1.570(d). It also directs the state court clerk to immediately issue a writ of possession commanding the HSCO to place the Administrator in possession of the property. The Final Judgment was entered by the state court on October 16, 2017, and a writ of possession was issued promptly the next day.[11] Both the state trial court and the appellate court denied Debtor's requests for a stay of the Final Judgment pending appeal.[12] Proceedings in the state appellate court have yet to conclude.

Deputy Carlton served the writ of possession on the Clark Street Property early on October 23, 2017. He spoke with Debtor's father and current counsel, Dov Sussman, and advised that he would return on the morning of October 25, 2017, to execute on the writ.

The service of the writ of possession prompted a flurry of activity and ultimately led to the filing of this bankruptcy case.

Shortly after the writ was served, Ms. Gaffney contacted attorney Gil Singer, an insolvency professional she had known for several years. Ms. Gaffney was in tears, claiming she was about to lose her home. Because he was unable to represent her, Mr. Singer referred

---

[11] Adm'r Exs. 23 and 24.
[12] Adm'r Exs. 27 and 28.

Ms. Gaffney to three other insolvency attorneys including attorney Richard McIntyre.

Later that same day, Ms. Gaffney met with Mr. McIntyre and members of his law firm.[13] Mr. Singer attended the meeting at Ms. Gaffney's request.  Though he was in and out of the meeting, Mr. Singer recalled a bankruptcy being "bandied about."  He specifically recalled discussion of the Debtor, who was not present, being placed in a bankruptcy.  This consultation notwithstanding, Debtor's initial bankruptcy petition was not filed by Mr. McIntyre's firm.[14]

Also, on October 23, 2017, Ms. Gaffney contacted the HCSO regarding the writ.  She was referred to Sgt. Polk, supervisor of the civil process section, with whom she spoke numerous times over the course of the next few days.   After Ms. Gaffney mentioned a bankruptcy, Sgt. Polk reached out to HCSO's in-house counsel, Mr. Gordillo.  Sgt. Polk indicated to Ms. Gaffney that execution of the writ would be temporarily on hold pending Mr. Gordillo's review.

This bankruptcy case was commenced at 11:24 a.m. on October 24, 2017.[15]  The petition was filed, in person, by Ms. Gaffney.[16]  The petition is handwritten and was not accompanied by bankruptcy schedules or all required initial disclosures and statements.[17]

After learning of the bankruptcy filing and the circumstances more generally, Mr. Gordillo conducted a review of the matter to determine whether execution of the writ would be stayed or go forward.   After a targeted review of the state court docket and his own legal

---

[13] *See* Adm'r Ex. 34.  Mr. McIntyre attended the meeting but did not bill for his time as other members of the firm who primarily handle consumer bankruptcy cases were in attendance.

[14] When filing in this court, Mr. McIntyre's firm uses a bankruptcy filing software that completes fields in forms with typewritten text.  Debtor's petition is handwritten.  Adm'r Ex. 29.  Yet, in a sworn letter to the United States trustee, Debtor stated that her petition was populated in part by the McIntyre firm and that she executed and mailed the petition back to the McIntyre firm.  Adm'r Ex. 33.

[15] Adm'r Ex. 29.

[16] Adm'r Exs. 37 ¶ 2 and 29.

[17] Adm'r Ex. 29.  Only Debtor's statement of her social security number, Official Form 121, and a Certificate of Credit Counseling were filed with the petition.  (Docs. 2 & 3).

research, Mr. Gordillo concluded that the Clark Street Property was not property of the bankruptcy estate and therefore the automatic stay did not apply. Accordingly, he determined that execution of the writ of possession as to the Clark Street Property could proceed.

On the evening of October 24 upon learning that the eviction would go forward, Sgt. Polk promptly called Ms. Gaffney and left her a voicemail message. Sgt. Polk called again early the next morning to reiterate that execution of the writ was no longer on hold.

Deputy Carlton and Corp. Harris arrived at the Clark Street Property to execute on the writ at about 1:00 p.m. on October 25, 2017. When the officers arrived, Mr. Sussman was the only person present. Ms. Gaffney arrived about thirty minutes later. Both Mr. Sussman and Ms. Gaffney were afforded the opportunity to remove their personal belongings from the property, and both did remove several such items. Additional time was allowed, with the consent of the Administrator who was also present, for a large number of cats to be removed safely from the property. After what Deputy Carlton described as a not insignificant period of time, the locks were changed, and the former occupants were escorted from the property.

Deputy Carlton and Corp. Harris searched the property to ensure no persons or pets remained on the premises. Both reported that the house was very cluttered and smelled of cat urine. Photos admitted as Administrator's Exhibit 14 accurately depicted the condition of the Clark Street Property at the time the writ was executed.[18] The photos confirm the officers' reports as to the condition of the property.

Both Deputy Carlton and Corp. Harris characterized the events of October 25, 2017, as peaceful. No damage to the property occurred. While the Administrator and his counsel were present, the officers observed no threats being made, nor were reports of threats filed afterward.

---

[18] Adm'r Ex. 14. The photos indicate that the home was in a state of great disarray and seeming disrepair.

Typically, when executing a writ of possession, a trespass warning would be issued by the officers to the parties being removed. Neither Mr. Sussman nor Ms. Gaffney were trespassed because the Administrator had agreed that they could return at a future time to collect the rest of their personal belongings.

At the time of the execution of the writ, the Administrator was aware of Debtor's bankruptcy filing. Though he knew of the filing, the Administrator did not take any action to stay execution of the writ. Rather, being unfamiliar with the effect of the automatic stay on the writ, he deferred to and relied upon Mr. Gordillo's determination that the writ was not stayed.

Since October 25, 2017, neither Debtor nor her family have returned to the Clark Street Property. The Administrator made several attempts to arrange for Debtor and her family to return to the property to collect their belongings.[19] Debtor never availed herself of the opportunity and her claims that she feared for her personal safety are not credible.

Throughout the events of October 23–25, 2017, Debtor was in Washington, D.C.[20] Further, at that time, she did not reside at the Clark Street Property,[21] having moved to Washington sometime around February 2016. When the chapter 13 petition was filed, Debtor lived and worked in Washington, D.C.[22]

Debtor's bankruptcy petition was filed, in person, by Ms. Gaffney.[23] A certificate of completion of prepetition credit counseling was filed with the petition.[24] The certificate

---

[19] Adm'r Exs. 35 and 36.

[20] *See also* Adm'r Exs. 15 and 33.

[21] Debtor's last visit to the Clark Street Property was about one month before the bankruptcy was filed. In the year leading up to the bankruptcy, Debtor's cell phone records indicate that she was present in Florida (and presumably at the Clark Street Property) for only about 45 days. Of those, 27 coincided with the 2016 Thanksgiving and winter holidays. Adm'r Ex. 15.

[22] Adm'r Exs. 8 p.5, 10, 32, 39, and 41 (341 Meeting Tr. at 9:21–25, 10:16–20, 19:7–9, 26:19–27:10; 2004 Exam. Tr. at 17:5–7 (referencing Adm'r Ex. 31), 92:3–17).

[23] *See also* Adm'r Ex. 37 ¶2.

[24] Adm'r Ex. 7; *see also* Doc. 3.

indicates that the credit counseling course was taken via the internet on October 23, 2017, at 7:35 p.m.[25]  At the time the online course was completed, Debtor was in Washington, D.C. and clocked in at work.[26]

Records of the course provider, Debtorcc.org, indicate that the internet protocol address from which the course was taken place the computer logged into the course in Tampa, FL.[27] The IP address belonged to Ms. Gaffney's business.[28]  Debtorcc.org's billing records also indicate that the course fee was paid by credit card belonging to Ms. Gaffney.  Nevertheless, Ms. Gaffney adamantly denies taking the credit counseling course for Debtor, providing that she was on the phone speaking with clients at the time the course was taken.

Debtor claims that she took the credit counseling course before she filed her petition, adding that she took notes during the course believing that there would be a test at the end.[29] But Debtor's testimony is not credible, at least to the extent she claims to have taken the course *before* filing for bankruptcy.  And though Debtor previously has maintained that she took the course on a laptop computer which connected to Ms. Gaffney's business via virtual private network, the court, as sanction for Debtor's failure to preserve electronically stored information, presumes for purposes of the Administrator's motion to dismiss that she did not take the credit counseling course on that laptop computer.[30]

---

[25] Adm'r Ex. 7.
[26] Adm'r Exs. 32 and 33.
[27] Adm'r Ex. 7.
[28] Adm'r Ex. 6.
[29] Adm'r Ex. 41 (341 Meeting Tr. at 21:7–11).
[30] Doc. 365 (Order Granting Motion for Sanctions Against Sarah Sussman for Spoliation of Evidence).

## Discussion

I.   *Debtor's Emergency Motion to Enforce the Automatic Stay and Request for Damages, Fees and Costs, and the Administrator's Emergency Motion for Relief from Stay*

Debtor argues that the execution of the writ of possession on October 25, 2017, which she asserts dispossessed her of her homestead, violated the automatic stay.  The Administrator counters that that stay could not have been violated because the Clark Street Property was never property of the bankruptcy estate subject to the automatic stay.

The threshold issue before the court is whether, as of the filing of this bankruptcy case, the Debtor had any interest in the Clark Street Property protected under 11 U.S.C. § 362.[31]  Relevant here is § 362(a)(3),[32] which provides that filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

Section 541 of the Bankruptcy Code lists the types of property interests included in "property of the estate" and thus protected by the automatic stay.[33]  Property of the estate is defined broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case."[34]  Courts look to applicable state law to determine a debtor's legal and equitable interests, if any, in property.[35]

---

[31]  Statutory references are to 11 U.S.C. §§ 101–1532 ("Code" or "Bankruptcy Code"), unless noted otherwise.

[32]  Debtor argues, consistent with prior papers filed with the court, that the Administrator's actions violated § 362(a)(4), which prohibits "any act to create, perfect, or enforce any lien against property of the estate."  But no lien is implicated here.  In previous filings, Debtor also cited § 362(a)(6), which prohibits "any act to collect, assess, or recover a claim against the debtor . . . ."  But that provision is also inapplicable as the Administrator's actions were not taken to collect on a "claim" as that term is defined in the Bankruptcy Code.  § 101(5).

[33]  *See Baillie Lumber Co. v. Thompson (In re Icarus Holding, LLC)*, 391 F.3d 1315, 1319 (11th Cir. 2004); *Bell-Tel Fed. Credit Union v. Kalter (In re Kalter)*, 292 F.3d 1350, 1352–53, 1352 n.1 (11th Cir. 2002); *Southtrust Bank of Ala., N.A. v. Thomas (In re Thomas)*, 883 F.2d 991, 994–95 (11th Cir. 1989); *see also In re Xenerga, Inc.*, 449 B.R. 594, 598, 601 (Bankr. M.D. Fla. 2011); *In re Fox*, 274 B.R. 909, 910 (Bankr. M.D. Fla. 2002).

[34]  § 541(a); *see, e.g.*, *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280, 1283 (11th Cir. 2002); *Thomas*, 883 F.2d at 995.

[35]  *See Butner v. United States*, 440 U.S. 48, 55 (1979); *Kalter*, 292 F.3d at 1353; *Lewis*, 137 F.3d at 1283.

Unfortunately for the Debtor, her claim to title to the Clark Street Property arose from a deed that was declared void by the state court before her bankruptcy petition was filed. The Final Judgment served to strip Debtor of all legal and beneficial interest in the property and effectively conveyed it to the Administrator. Accordingly, the Clark Street Property was not property of the bankruptcy estate subject to the automatic stay.

In Florida, "[i]t is well established that a judgment for conveyance of real property can itself have the effect of a duly executed conveyance and can be recorded as such."[36] The conveyance operates pursuant to Florida Rule of Civil Procedure 1.570(d).[37] For a judgment to serve as a conveyance, it must contain or reference a legal description of the property and identify the property interests involved. Further, the court issuing the judgment must have *in-rem* jurisdiction over the property.[38]

The court finds that all requirements necessary under Florida law to effectuate a conveyance of the Clark Street Property to the Administrator were satisfied by the Final Judgment. The Final Judgment contains the legal description of the Clark Street Property and expressly defines the property interests involved, namely that the Administrator is to have legal and beneficial title and is entitled to immediate possession. And the Final Judgment was issued by the Circuit Court for Hillsborough County, which possessed the necessary *in-rem* jurisdiction as it is the circuit court for the county in which the Clark Street Property sits.[39]

---

[36] *Williams v. Shuler*, 551 So. 2d. 585, 587 (Fla. Dist. Ct. App. 1989); *see also Alt. Dev. Inc. v. St. Lucie Club & Apartment Homes Condo. Assoc.*, 608 So. 2d 822, 826 (Fla. Dist. Ct. App. 1992).

[37] *See, e.g.*, *Alt. Dev. Inc.*, 608 So. 2d at 826; *see also In Kendall Grove Joint Venture v. Martinez-Esteve (In re Kendall Grove Joint Venture)*, 50 B.R. 64, 66 (Bankr. S.D. Fla. 1985).

[38] *See Alt. Dev. Inc.*, 608 So. 2d at 826; *Williams*, 551 So. 2d. at 587.

[39] *See Griveas v. Amoco Oil Co.*, 854 So. 2d 841, 843 (Fla. Dist. Ct. App. 2003) ("Only the circuit court in the county where the real property is located has in rem jurisdiction."); *see also Goedmakers v. Goedmakers*, 520 So. 2d 575, 578 (Fla. 1988) ("[C]ourts have no jurisdiction in actions relating to real property located outside their territorial boundaries.").

Accordingly, after entry of the Final Judgment, Debtor no longer had legal or beneficial title to the Clark Street Property.[40]  In short, she no longer owned the property, whether as "trustee" or otherwise.

The Final Judgment also directed the issuance of the writ of possession and effectively determined that neither Debtor nor anyone other than the Administrator had a legal possessory interest in the Clark Street Property.[41]  Debtor has identified no equitable interest that might give rise to a legal interest, such as a commercial tenant who has the right to cure a payment default even after termination of the lease.[42]

Debtor's right to possession was terminated by the Final Judgment and the writ of possession.  Further, Debtor was not in physical possession of the Clark Street Property when her chapter 13 petition was filed, having relocated to Washington, D.C. over a year before the petition.  Rather it was her parents that were in actual possession and her parents who were dispossessed.  But her parents are not the debtors in this case.

Still, Debtor argues that the Clark Street Property is her declared homestead protected

---

[40]  Debtor did not raise the issue at trial that the Final Judgment, though rendered prepetition, was not recorded until several days after the petition was filed.  But this fact is of no moment.  Fla. R. Civ. P. 1.570(d) does not speak of recordation unlike the analogous Fla. Stat. § 61.075(4), which provides that a judgment of dissolution of marriage may operate as a transfer of property "when the judgment . . . *is recorded*" (emphasis added).  Further, recordation "does not operate to convey title." *Van Eepoel Real Estate Co. v. Sarasota Milk Co.*, 129 So. 892, 895 (Fla. 1930) (quoting *Hunter v. State Bank*, 61 So. 497, 499 (Fla. 1913)).

[41]  *See* Fla. R. Civ. P. 1.580; *Cohen v. Ginsberg*, 715 So. 2d 1113, 1113 (Fla. Dist. Ct. App. 1998) ("The gist of [Fla. R. Civ. P. 1.580(a)] is that a court cannot order a writ to issue until it has formally adjudicated the right to possession of property."); *see also Sarasota-Fruitville Drainage Dist. v. All Lands Within Said Dist. Upon Which Drainage Taxes for Year 1928 Have Not Been Paid*, 25 So. 2d 498, 500 (Fla. 1946) (noting a writ of possession is meant to transfer possession of real property *after* title and right to possession have been adjudicated); *Dixon v. Dixon*, 191 So. 292, 293 (Fla. 1939) (noting a writ of possession issues "only when the right is clear and free from doubt, when there is no equity—or appearance of equity—in the defendant; it is not customary to issue the writ where there is a bona fide contest as to the right to the possession of the property, or where the rights of the parties have not been fully and finally adjudicated in the principal suit").

[42]  *Cf. In re PetitUSA, LLC*, No. 16-10305-BKC-LMI, 2016 WL 8504995, at *3–*4 (Bankr. S.D. Fla. Apr. 5, 2016) (discussing, under Florida law, the equitable remedy of anti-forfeiture).  Debtor cites to *In re PetitUSA, LLC*, but the case is readily distinguishable.  That case involved a landlord-tenant dispute arising from a commercial lease of business property.

under Art. X § 4 of the Florida Constitution and that the Administrator's actions were in clear violation of that provision. Unfortunately for the Debtor, her argument misunderstands the relevant inquiry. Even if the Clark Street Property had homestead status prior to entry of the Final Judgment, that status would not imbue Debtor with any additional rights or interests in the Clark Street Property that might be protectable by the automatic stay.[43]

Debtor also attacks the Final Judgment, arguing that it cannot be given preclusive effect because it is not a "final" judgment. She notes, first, it is on appeal and, second, the state court did not decide Debtor's homestead claim and therefore *res judicata* does not apply. The court addresses each argument in turn.

First, the mere filing of an appeal does not render an otherwise final judgment unenforceable or without effect. Rather, to stay the effect of a final judgment an aggrieved party must obtain a stay pending appeal. This is true in both Florida state[44] and federal courts.[45] Debtor sought a stay of the Final Judgment before both the state trial and appellate court, but her requests were denied.

Second, in this circuit, whether a federal court should give *res judicata* or preclusive effect to a state court judgment is determined according to the laws of the state that rendered the decision.[46] In Florida, "a party is precluded from raising any issue that was or could have

---

[43] *See Venn v. Reinhard (In re Reinhard)*, 377 B.R. 315, 319 (Bankr. N.D. Fla. 2007) ("The acquisition of homestead status does not confer any additional property interest or rights in property."); *see also Heartwood 4, LLC v. Tabor (In re Tabor)*, Adv. No. 15-01616-EPK, No. 14-20731-EPK, 2016 WL 1533362, at *3 (Bankr. S.D. Fla. Apr. 13, 2016) ("Stated another way, Florida homestead status is a 'claim for the underlying property interest' and is not itself a property interest.").

[44] *See* Fla. R. App. P. 9.310(a); *FMS Mgmt. Sys., Inc. v. IDS Mortg. Corp.*, 402 So. 2d 474, 475 (Fla. Dist. Ct. App. 1981).

[45] *See* Fed. R. Civ. P. 62; Fed. R. Bankr. P. 8007; *Lofstedt v. Kendall (In re Kendall)*, 510 B.R. 356, 359 (Bankr. D. Colo. 2014) ("A stay pending appeal temporarily suspends proceedings or the effect of a judgment.").

[46] *See Copeland v. Hous. Auth. of Hollywood*, 300 F. App'x 843, 844 (11th Cir. 2008) (applying Florida law); *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006) (applying Alabama law); *see also Lasky v. Itzler (In re Itzler)*, 247 B.R. 546, 548 (Bankr. S.D. Fla. 2000).

been raised in an earlier suit that (1) involved [the] same parties; (2) was on the same cause of action; and (3) was decided on the merits."[47]  Debtor acknowledges she raised the issue that the Clark Street Property was her homestead in the course of the state court proceedings.  There can be little doubt that the state court action involved the same parties.  So too, the matters concern the "same cause of action" as that term is applied by Florida courts.[48]

Although Debtor is correct that the Final Judgment does not include an express adjudication of Debtor's homestead claim, Debtor ignores what occurred in the state court.[49] The court struck Debtor's and Ms. Gaffney's pleadings as a sanction for their refusal to cooperate in discovery and to abide by directives of the court.  Thus, it was Debtor's own conduct and the conduct of her counsel that led the state court to decline to decide her homestead claim.  And "[w]here a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits . . . and even attempts to frustrate the effort to bring the action to judgment, it is not an abuse of discretion . . . to prevent further litigation of the issues resolved by [a] default judgment in the prior action."[50]

The court concludes that principles of *res judicata* are not a bar to this court's giving preclusive effect to the Final Judgment.  Further, the court cannot simply ignore that early in

---

[47] *Copeland*, 300 F. App'x at 844 (citing *Fla. Dep't of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001)).

[48] *See Youngblood v. Taylor*, 89 So. 2d 503, 505 (Fla. 1956) ("[T]he test of the identity of the causes of action, for the purpose of determining the question of res adjudicata, is the *identity of the facts essential* to the maintenance of the actions." (quoting *Gordon v. Gordon*, 36 So. 2d 774, 776 (1948))).

[49] Debtor's characterization of the Final Judgment as a "default judgment" is misleading.  The judgment was entered after the state court sanctioned the defendants, including Debtor, by striking their answers and affirmative defenses.  The Final Judgment therefore is not a default judgment in the traditional sense, as where a defendant fails to appear and defend the suit.  Rather, it is a default only in the technical sense in that it was entered after a clerk's default.  Both Debtor and Ms. Gaffney appeared, filed defensive pleadings, asserted counterclaims, and were offered numerous opportunities to litigate the dispute.  But in the end, they were sanctioned for their misconduct and willful failure to abide by the state court's orders.

[50] *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1325 (11th Cir. 1995); *cf. In re Itzler*, 247 B.R. at 550–55, 555 ("[U]nder Florida law, even a pure default judgment, which arose from no participation of the defendant, is sufficient to meet the "fully litigated" element of collateral estoppel.").

this case, the court modified the automatic stay to allow Debtor's appeal of the Final Judgment to proceed to conclusion. The court's decision was based, in part, upon an agreement of the parties that judicial resources would best be conserved if matters related to the parties' respective interests in the Clark Street Property were decided finally by the state appellate court. On several occasions since, this court has declined Debtor's invitation to revisit that decision and it will not do so now. Similarly, the court adheres to its position that it will not address Debtor's arguments on the merits of the state court's decision.

Because the Clark Street Property did not become property of the bankruptcy estate subject to the automatic stay, there could be no violation of the stay based on execution of the writ and for which Debtor might recover damages under 11 U.S.C. § 362(k).

Though the court concludes that the Clark Street Property is not property of the estate subject to the automatic stay, an issue remains as to items of Debtor's personal property that she asserts were inside the property. Debtor testified that she was prevented from retrieving items of her personal property due to threats made by the Administrator either of her immediate arrest should she return to the property or that her physical safety was in danger. If true, this might rise to a violation of the automatic stay. But the facts tell a different story.

To begin, Debtor did not identify specific items of her personal property located in the Clark Street Property at the time of the execution of the writ, save an unnamed feline. The few specific items Debtor identified belonged not the her, but to her brother or parents.[51] Instead,

---

[51] During trial, the court conditionally permitted Ms. Gaffney to testify as to her personal property lost as a result of her removal from the Clark Street Property. The court's ruling was based upon the representation of Debtor's counsel that case law existed where courts had permitted a debtor to recover for a stay violation based upon damages suffered not by the debtor but by the debtor's family. The court has reviewed counsel's Supplemental Memorandum of Law (Doc. 645) and concludes that the cited cases do not stand for that particular proposition. Rather, the cases discuss the issue of standing of non-debtors to pursue, on their own behalf, damages for a violation of the automatic stay.

she described in very broad terms items typically belonging to an entire family. And as Debtor had relocated to Washington, D.C. over a year before the filing, the court cannot conclude that, save for her cat, Debtor maintained personal property at the Clark Street Property.

As to the unnamed cat, both Deputy Carlton and Corp. Harris testified that Mr. Sussman and Ms. Gaffney were provided additional time to remove several cats from the residence, presumably including the Debtor's. The officers sweep the property specifically to ensure that no persons or animals were left behind. It is not entirely clear but the cat in question may have been feral and living outside of the residence. If so, it cannot be said that the Administrator's obtaining possession of the Clark Street Property was an act to exercise control over the cat nor prevented Debtor or her family from retrieving the cat, even if at a later time.

Debtor's claim that she was prevented from retrieving her property by the Administrator's threats is belied by the record. Deputy Carlton and Corp. Harris reported that the events of October 25 were peaceable, and that no threats were made or later reported. Mr. Sussman and Ms. Gaffney were allowed additional time to retrieve their personal effects. And contrary to standard practice, a trespass warning was not issued because the Administrator had agreed that arrangements would be made to allow Mr. Sussman and Ms. Gaffney to collect the rest of their personal belongings at some time in the future. Debtor's claim that she feared for her personal safety were she to return to the Clark Street Property was not credible.

Last, the Administrator offered on several occasions to arrange for Debtor and her family to return to the Clark Street Property to retrieve their remaining personal property. They declined the Administrator's offers.

In the end, the court finds that no willful violation of the automatic stay occurred as to either the Clark Street Property or Debtor's personal property. Without a violation of the stay,

"the damages provision of 11 U.S.C. § 362 by its terms [becomes] irrelevant."[52]  Accordingly, the court need not discuss Debtor's claimed damages.

The court now turns to the Administrator's motion for relief from the stay.  Assuming the Clark Street Property had been property of the estate subject to the automatic stay, the court finds that cause exists to annul the stay as of the filing of the chapter 13 petition.[53]  Section 362(d) of the Code authorizes a court to annul the stay retroactive to the petition date where "the circumstances of the particular case warrant such relief."[54]  The decision to annul the stay is within the discretion of the court "with each decision being considered on a case-by-case basis."[55]  Of the several factors to be considered in determining whether to annul the automatic stay, the debtor's conduct and lack of good faith are the most important.[56]  Filing a chapter 13 petition for an improper purpose evidences bad faith.[57]  And filing a chapter 13 petition for purposes of circumventing a final state court judgment can be an improper purpose.[58]

The events that transpired in the days leading up to the filing of this case are not entirely clear, but one fact is crystal clear.  The sole purpose of Debtor's chapter 13 petition was an

---

[52] *Vazquez Laboy v. Doral Mortg. Corp. (In re Vazquez Laboy)*, 647 F.3d 367, 373–74 (1st Cir. 2011); *see Valdes Morales v. EMI Equity Mortg. Inc. (In re Valdes Morales)*, Adv. No. 16-00166, No. 11-04694 BKT, 2019 WL 1220839, at *4 (Bankr. D.P.R. Mar. 13, 2019) (providing where there is no violation of the stay, damages under § 362(k) are not available).

[53]  § 362(d)(1) (providing the court may, "for cause", terminate, annul, modify, or condition the stay).

[54]  *In re Barr*, 318 B.R. 592, 598 (Bankr. M.D. Fla. 2004) (citing *Albany Partners, Ltd. V. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670 (11th Cir. 1984)).

[55]  *In re Stockwell*, 262 B.R. 275, 280 (Bankr. D. Vt. 2001); *see Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 21 (B.A.P. 9th Cir. 2003); *Albany Partners, Ltd. V. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 675 (11th Cir. 1984) (noting that while the stay should be annulled only in limited circumstances, a court does not abuse its discretion in granting such relief "particularly" when it finds the petition was not filed in good faith).

[56]  *See In re Barr*, 318 B.R. at 598; *In re Webb*, 294 B.R. 850, 853 (Bankr. E.D. Ark. 2003); *see generally Albany Partners*, 749 F.2d at 675–76.

[57]  *E.g.*, *Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936, 939–41 (11th Cir. 1986); *see generally Kitchens v. Ga. R.R. Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885, 887–89 (11th Cir. 1983) (discussing a non-exhaustive set of factors courts may use in determining a chapter 13 debtor's good faith).

[58] *See In re McGovern*, 297 B.R. 650, 661 (S.D. Fla. 2003) (listing cases); *In re Soppick*, 516 B.R. 733, 746–47 (Bankr. E.D. Pa. 2014); *In re Peterson*, 228 B.R. 19, 24–25, 25 n.4 (Bankr. M.D. Fla. 1998); *In re Bandini*, 165 B.R. 317, 320 (Bankr. S.D. Fla. 1994).

attempt to relitigate issues that were or should have been litigated in state court.  The court determined Debtor's chapter 13 petition was improper for that very reason, when it denied confirmation and dismissed the petition.[59]  But even after Debtor converted her case to a chapter 7 liquidation, the matters dominating the court's docket continued to revolve around the same state court disputes between the Debtor and the Administrator, between the Administrator and Ms. Gaffney, or among the three collectively.  The trial on the Contested Matters did little to dissuade the court from this conclusion.  It is simply not the function of this court to relitigate state court issues, particularly when they are, according to Debtor, still on appeal.

As to the remaining factors,[60] the court finds they also weigh in favor of the Administrator and annulling the stay.  Grounds certainly existed for the modification of the stay had the Administrator filed a motion before execution of the writ.  Among other things, both the state trial court and appellate court had denied Debtor's request for a stay pending appeal.  And the parties agreed early in the case that the state court was best suited to determine their respective rights in the Clark Street Property, which led this court to modify the stay.  Although the Administrator was aware of the bankruptcy, it was Mr. Gordillo, HCSO's in-house counsel, who decided that execution of the writ could and should proceed.  Relying on Mr. Gordillo's opinion was reasonable, particularly because the court agrees that Mr. Gordillo was correct.

Accordingly, for these reasons, the Debtor's *Emergency Motion to Enforce the Automatic Stay and Request for Damages, Fees and Costs* (Doc. 7) will be denied, and the Administrator's *Emergency Motion for Relief from Stay* (Doc. 28) will be granted.

---

[59] On September 21, 2018, the court dismissed Debtor's chapter 13 petition and provided leave to convert the case to chapter 7.  (Doc. 305).  Debtor opted to convert on September 29, 2018. (Doc. 309).

[60] *See In re Barr*, 318 B.R. at 598.

II.    *Administrator's Objection to Debtor's Claim of Exemptions on Amended Schedule C*

The Administrator objects to Debtor's homestead exemption in the Clark Street Property on the basis that she is not entitled to claim the exemption because at the time she filed this bankruptcy case, she did not own the property and did not reside there.[61] Debtor responds that her homestead claim, which is asserted under Art. X § 4 of the Florida Constitution, is "unassailable."[62] She argues that it is of no moment that she held title to the property as trustee of The Sussman Family Trust Living Trust rather than in her individual capacity or that she allegedly resided in Washington, D.C. because it is not disputed that her family resided at the Clark Street Property.

Florida's constitution does not define the term "homestead," but it does provide for certain limitations and requirements. Debtor claims the exemption from forced sale provided in Art. X § 4 of the Florida Constitution. That provision contains an ownership requirement, a residency requirement, and an acreage limitation.[63] The acreage limitation is not at issue here.

The Administrator, who bears the burden of persuasion on his objection,[64] has demonstrated that as of the filing of this bankruptcy case, Debtor did not hold title to the property in any capacity and further did not reside there. Thus, neither the ownership nor residency requirement appear met. But Debtor repeats her homestead claim is "unassailable."

As to the residency requirement, Debtor argues that her homestead exemption cannot be denied because she did not reside on the property (a fact she disputes) when her family

---

[61] The Administrator also objected to Debtor's claimed exemptions in her personal property. But as he did not pursue those objections at trial, the court deems them abandoned.

[62] Debtor has never filed a formal, written response the Administrator's objection. The court therefore relies on her arguments made at trial, which are echoed throughout her numerous filings in this case.

[63] *See Englander v. Mills (In re Englander)*, 95 F.3d 1028, 1031 (11th Cir. 1996); *In re Wierschem*, 152 B.R. 345, 347 (Bankr. M.D. Fla. 1993).

[64] Fed. R. Bankr. P. 4003(c); *see* § 522(*l*); *In re Caliri*, 347 B.R. 788, 797 (Bankr. M.D. Fla. 2006).

resided there.  Debtor is correct on the law,[65] and the Administrator does not contest that Debtor's parents, who were the individuals removed by HCSO, resided at the Clark Street Property.  Accordingly, the court finds that the residency requirement is met.  But that is not the end of the analysis.  Debtor must still satisfy the ownership requirement.[66]

As to the ownership requirement, Debtor argues that she cannot be denied her homestead exemption simply because she held title to the Clark Street Property via revocable trust rather than individually.  Again, Debtor is correct on the law,[67] but that is not the issue in dispute.  Rather, the issue is whether Debtor held title—in any capacity—given the Final Judgment.  Debtor does not directly address this issue other than to attack the propriety and finality of the Final Judgment, arguments the court declines to address or rejects above.

During closing argument, Debtor attempted to bolster her ownership claim citing to data from the Hillsborough County Tax Collector and a "Notice of Homestead" she purportedly recorded in the Hillsborough County official records.  These documents were not admitted at trial and though filed of record in the case,[68] Debtor did not ask for the court to take judicial notice of these documents prior to the close of evidence.  Nonetheless, because the court finds that neither document is terribly enlightening on the relevant issue and notwithstanding Debtor's failures to follow the local rule and abide by orders of this court as to exhibits, the court will consider these documents but only for the limited purpose of supporting Debtor's testimony that, prepetition, she had received a homestead exemption for real property taxes and

---

[65] *See, e.g.*, *In re Oyola*, 571 B.R. 874, 877–78 (Bankr. M.D. Fla. 2017); *In re Wierschem*, 152 B.R. at 347.

[66] Debtor relies heavily on Judge Williamson's decision in *In re Oyola*, and the tests for residency articulated by the court.  But Debtor's argument conflates the constitutional residency requirement with the ownership requirement, which was not in dispute in Judge Williamson's case.

[67] *See, e.g.*, *In re Edwards*, 356 B.R. 807, 810–11 (Bankr. M.D. Fla. 2006); *In re Alexander*, 346 B.R. 546, 549–51 (Bankr. M.D. Fla. 2006).

[68] *See supra* note 2.

at some point had "declared" homestead on the Clark Street Property.

Until the Final Judgment was entered, Debtor could arguably claim the constitutional homestead exemption from taxation.[69] So it is not surprising that the county tax rolls prior to entry of the Final Judgment reflect that election. But the homestead exemption from taxation is quite different from the homestead exemption from forced sale upon which Debtor relies. These two exemptions derive from two different provisions of the Florida Constitution, serve two different policy goals, and are subject to two different interpretative standards.[70] Simply put, one is not dispositive of the other.

Debtor could not recall when she "declared" homestead on the Clark Street Property. But it appears that the Notice of Homestead was recorded two days after the Final Judgment was entered. At that point, Debtor no longer had an ownership interest in the Clark Street Property to support a homestead claim. And it cannot be the law that one can receive real property via fraudulent transfer and then insulate oneself from liability by claiming the property as homestead, particularly after suffering an adverse judgment. Fortunately, the court need not address that particularly thorny issue here as a debtor's entitlement to a claim of exemption for purposes of a bankruptcy case is determined as of the date of the petition.[71] And on that date, as a result of the Final Judgment, Debtor had no ownership interest in the Clark Street Property. Therefore, the ownership requirement is not met, and the exemption must be disallowed.

Accordingly, the Administrator's *Objection to Debtor's Claim of Exemptions on*

---

[69] Florida's homestead exemption from taxation is set forth in Art. VII § 6 of the Florida Constitution.

[70] *See Grisolia v. Pfeffer*, 77 So. 3d 732, 735–36 (Fla. Dist. Ct. App. 2011).

[71] *See In re Williams*, 427 B.R. 541, 547 (Bankr. M.D. Fla. 2010); *In re Vick*, No. 07-10844-BKC-AJC, 2008 WL 2444526, at *2 (Bankr. S.D. Fla. June 16, 2008) (listing cases).

*Amended Schedule C* will be sustained.[72]

III.    *Administrator's Motion to Dismiss Case for Debtor's Failure to Comply with 11 U.S.C.*
       *§§109(h)(1) and 521(b) and for Debtor's Fraud on the Court*

The Administrator seeks dismissal of this case based upon Debtor's ineligibility to be a

debtor due to her failure to complete prepetition credit counseling as mandated by § 109(h)(1)

of the Bankruptcy Code.  Debtor responds that she completed the course as evidenced by the

certificate of completion of prepetition credit counseling filed with the petition.

As detailed above, the certificate filed with the court indicates that the credit counseling

course was taken via the internet on October 23, 2017, at 7:35 p.m.  The course provider's

records indicate that the IP address from which the course was taken place the connected

computer in Tampa, FL.  At that time, Debtor was in Washington, D.C. and clocked in at work.

These facts are not disputed and are established by the evidence proffered by the Administrator.

Prior to trial on the Contested Matters, the court held a three-day evidentiary hearing

relative to Debtor's failure to preserve electronically stored information, specifically the laptop

computer on which Debtor claims to have taken the credit counseling course.  The court

ultimately concluded that Debtor, after being directed to preserve the laptop, destroyed it with

the intent to deprive the Administrator of access to the ESI contained on the laptop.  As sanction

for her misconduct, the court ordered that it would presume that Debtor did not take the credit

counseling course on that laptop computer.[73]  The presumption was rebuttable.

Debtor's only evidence that she completed the credit counseling course *before* filing the

---

[72]  The court pauses briefly to note that the chapter 7 trustee's decision not to administer the Clark Street Property as indicated in her Report of No Distribution dated Nov. 16, 2018, nor object to the homestead exemption is not dispositive of the issue.  It merely reflects her sound business judgment that given the competing claims to the property and the uncertainty of Debtor's interest, pursuing the property would not result in any benefit to the estate. In any event, the Administrator filed a timely objection to the exemption.
[73]  Doc. 365 (Order Granting Motion for Sanctions Against Sarah Sussman for Spoliation of Evidence).

petition is her own testimony, which the court does not find credible.  The court believes that

Debtor eventually took the course, after the original petition was filed, but that does not save

Debtor unless she had complied with the provisions of § 109(h)(3), which she did not do.  And

Debtor offered no additional evidence to explain how she could simultaneously be at work in

Washington, D.C. while also logged into any computer in Tampa, FL., thereby failing to rebut

the evidentiary presumption.

     Debtor argues, however, that the motion must be denied because the Administrator

failed to prove that Ms. Gaffney took the course for the Debtor, as he had theorized.  But the

Administrator does not have to identify and prove that someone other than the debtor took the

credit counseling course.  Instead, he must show only that it is likely Debtor did not, which

would render her ineligible to be a debtor before this court.[74]

     Having carefully reviewed the evidence adduced at trail, the court must conclude that

Debtor did not complete the credit counseling course before filing this bankruptcy.  Though

Ms. Gaffney testified that "Sarah took the course," she did not explain her basis for that

assertion.  Ms. Gaffney stated that she had spoken to Debtor about the need to complete credit

counseling before filing a bankruptcy, but she did not testify as to any facts to suggest that

Debtor actually took the course.  This is not to say that the court does not credit Ms. Gaffney's

testimony that she did not take the course for the Debtor.  This may be true.  But that fact alone

---

[74]  *See In re Hess*, 347 B.R. 489, 500–01 (Bankr. D. Vt. 2006); *In re Marek*, No. 11-21158-TLM, 2012 WL 2153648, at *11 & n.52 (Bankr. D. Idaho June 13, 2012) ("Lack of statutory eligibility is 'cause' for dismissal of the case."); *cf. Marshall v. McCarty (In re Marshall)*, 596 B.R. 366, 369 (B.A.P. 8th Cir. 2019) (finding the debtor ineligible because she failed to prove she had satisfied the credit counseling requirement); *In re Hargrove*, 465 B.R. 507, 509 (Bankr. E.D. Ark. 2011) ("Debtors have the burden of proof to establish their eligibility for relief under the provisions of 11 U.S.C. § 109."); *In re Voelker*, 123 B.R. 749, 750 (Bankr. E.D. Mich. 1990) ("When a debtor's eligibility to file under a particular chapter of the Bankruptcy Code is challenged, the burden is upon the debtor to establish such eligibility."); *In re Morgan Strawberry Farm, L.D.*, 98 B.R. 584, 585 (Bankr. M.D. Fla. 1989) ("The burden of proof in establishing eligibility for bankruptcy relief is on the party filing the petition.").

does not lead to the conclusion that Debtor completed the credit counseling course prepetition.[75]

Section 109(h) of the Bankruptcy Code has been criticized as a failed experiment added to the Code by BAPCPA.[76]  Nonetheless, Congress' mandate is clear.  Absent exemption or timely obtained leave of court, the failure to obtain credit counseling prior to filing bankruptcy renders a debtor ineligible to be a debtor in bankruptcy.[77]  Although the failure to comply with § 109(h)(1) not jurisdictional,[78] the court is compelled to dismiss the case.[79]

Accordingly, the Administrator's *Motion to Dismiss Case for Debtor's Failure to Comply with 11 U.S.C. §§109(h)(1) and 521(b) and for Debtor's Fraud on the Court* will be granted and this case dismissed.

The court will enter a separate Order consistent with this Memorandum Decision.

Service of this Decision other than by CM/ECF is not required.  Local Rule 9013-1(b).

---

[75]  The court denied summary judgment to the Administrator on his motion to dismiss, in part, based on the Affidavit of Stanley Gloster (Doc. 511), in which Mr. Gloster averred that in a conversation that occurred shortly after the petition was filed, Debtor mentioned taking the credit counseling course.  In the court's view, this statement created an issue of fact and, if true, may have corroborated Debtor's claims.  But Mr. Gloster was not offered as a witness at trial.

[76]  *See In re Enloe*, 373 B.R. 123, 127 & n.13 (Bankr. D. Colo. 2007); *In re Elmendorf*, 345 B.R. 486 (Bankr. S.D. N.Y. 2006), *aff'd sub nom. Adams v. Finlay*, No. 06-6040, 2006 WL 3240522 (S.D. N.Y. Nov. 3, 2006), *vacated and remanded sub nom. In re Zarnel*, 619 F.3d 156 (2d Cir. 2010).

[77]  § 109(h); *see, e.g.*, *Marshall*, 596 B.R. at 368–69; *Vexler v. Baruch (In re Baruch)*, 564 B.R. 424, 427 (M.D. Fla. 2016).

[78]  *See Baruch*, 564 B.R. at 428–30; *see also Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 169 (2d Cir. 2010); *In re Wise*, 415 B.R. 579, 583 (Bankr. N.D. Ala. 2009).

[79]  *See Baruch*, 564 B.R. at 424; *see also Marshall*, 596 B.R. at 369; *In re Stinnie*, 555 B.R. 530, 534–36 (Bankr. W.D. Va. 2016); *In re Ross*, 338 B.R. 134, 136–41 (Bankr. N.D. Ga. 2006).